**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JAMES ANDERSON, Individually and on Behalf of all Others Similarly Situated,** | |
| Plaintiff, | Case No. 17 C 6104 |
| v. | Judge Harry D. Leinenweber |
| **LOGITECH, INC.,** | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

The Plaintiff, James Anderson (hereinafter, "Anderson" or "Plaintiff"), has filed this nationwide class action (excluding California) with an Illinois subclass, alleging consumer fraud, breach of warranty, and unjust enrichment arising from Plaintiff's purchase of a digital home video surveillance system known as the "Alert" system manufactured and sold by Defendant, Logitech (hereinafter, "Logitech" or "Defendant").

Logitech is a non-resident entity incorporated in California with its principal place of business in California (Complaint, ¶7). Plaintiff is an Illinois resident (Compl. ¶ 6). According to the declaration of Eric Marvin ("Marvin", Head of Workplace Services for Logitech, the Defendant is not

incorporated in Illinois, is not headquartered in Illinois, is not registered to do business in Illinois, has no facility in Illinois, and neither owns nor leases real estate in Illinois.

## II. DISCUSSION

### A. Defendant's Motion to Stay

Apparently there is another lawsuit currently pending in the District Court for the District of New Jersey, which was filed prior to this case. Defendant attempts to invoke the first filing rule and asks this Court to stay this proceeding until the District Court of New Jersey has a chance to rule on a pending Motion to Dismiss. Plaintiff, as expected, strongly opposes a stay.

In considering whether to stay a suit, three factors are considered: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether the stay will simplify the issues in question, and (3) whether a stay will reduce the burden of litigation on the parties and the court. *Pfizer Inc. v. Apotex, Inc.,* 640 F. Supp.2d 1006, 1007 (N.D. Ill. 2009). The Court denies the stay for the reason that will become more apparent later in this opinion when the Court considers the jurisdiction question, *i.e.,* the Court is dismissing the nationwide class allegations.

**B. Defendant's Motion to Dismiss Nationwide Class**

The Defendant has also moved to dismiss the nationwide class action aspect of this case on the basis of *Bristol-Myers Squibb v. Superior Court,* 137 S.Ct. 1773 (2017). Plaintiff disputes the applicability of *Bristol-Myers* because that case was not a class action but a series of individual claims filed together in state court. He cites a number of California district court cases in which his argument prevailed. However, this Court is not writing on a clean slate. This Court has already applied *Bristol-Myers* to a nationwide class action in *DeBernardis v. NBTY, Inc.,* No. 17 CV 6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018), which followed *McDonnell v. Nature's Way Products,* No. 16 C 5011, 2017 U.S. Dist. LEXIS 177892, at *10 (N.D. Ill. Oct. 26, 2017), which also applied *Bristol-Myers* to a nationwide class action. In sum it still appears to the Court that a nationwide class action is not significantly different from a mass tort suit involving a multitude of individual claims. The putative nationwide class action claims are stricken.

**C. Defendant's Motion to Dismiss the Illinois Sub-class**

The Defendant also seeks dismissal of the Illinois sub-class based on an unpublished decision of a California State

trial court. Defendant has not supplied the Court with any of the documentation as to the why and wherefore that moved that court to deny class status. It seems to the Court that it is too premature for the Court to decide class status based on such a flimsy record. The Court therefore denies the Motion to Dismiss the claim of the Plaintiff and that of the Illinois sub-class.

Defendant also argues that California law applies to this case rather than Illinois. However, the fact that his case will proceed on the allegations of an Illinois only sub-class, it appears to be, as Plaintiff argues, premature to make the decision as to what law applies to this case.

### D. The Illinois Consumer Fraud Act

Next Defendant takes aim at the claim under the Illinois Consumer Fraud Act ("ICFA") for failure to meet Rule 9(b)'s standard of specificity. To state an ICFA claim, a plaintiff must allege (1) a deceptive act or unfair practice, (2) the defendant intended that the plaintiff rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained damages, and (5) the damages were caused by the deception. *Blakenship v. Pushpin Holdings,* 157 F. Supp.3d 788, 792 (N.D. Ill. 2016). As agreed

by the parties the deceptive act or unfair practice must be pled with the specificity required by Rule 9(b), the who, what, when, where, and how of the fraudulent action.

The Complaint in alleging deceptive conduct or unfair practice, starts out with allegations of Logitech's marketing materials which emphasized reliable, continuous, home security through its digital cameras to prevent and discourage home invasions and robberies. The marketing materials also claimed that Logitech's system was simple to use and easy to install and cheaper than subscription based home security systems. Logitech also provided a one year warranty promising that its hardware would be free of defects in material and workmanship. It promised to repair, replace or refund.

The Complaint further alleges that Logitech provided an online forum for purchasers for posting of information, announcements, equipment updates, etc. The Complaint alleges that the forum was inundated with Complaints about the functionality and efficacy of Logitech products. The complaints reported problems that included (1) difficulty in installation; (2) system would not turn on, stay powered up, or record and download video; (3) failures of the micro SD cards installed in the cameras; (4) connectivity problems; (5) overheated

components; (6) inoperable or faulty motion sensors; (7) delayed and failed alerts; and (8) software glitches and bugs making the system unreliable and inoperable.

The Complaint further alleges that because of the equipment failures Logitech faced a deluge of customer complaints and requests for warranty repairs and refunds. In response Logitech implemented a strategy to avoid the express warranty by (1) requiring the customer to go through repetitive, cumbersome, and unsuccessful troubleshooting processes, (2) failing to make repairs and replacements in a timely manner, (3) telling customers that replacement parts were on back order, (4) creating administrative hassles for customers to prove purchases, (5) replacing defective parts with defective parts, (6) misleading customers with promises of hardware and software fixes that did not materialize or work, (7) failing to implement upgrades that worked, and (8) failing to provide refunds.

The Complaint further alleges that Logitech made a decision in the last quarter of 2012 to discontinue the manufacture and sale of its Alert System by 2014. It concealed this decision from purchasers who invested money in defective systems that would soon be obsolete. On July 14, 2017, Logitech announced publicly its intent to discontinue its system.

The Complaint further alleges that Logitech exclusively knew its design was defective, especially after it was hit with a deluge of complaints after its product hit the market and that this knowledge led it to make the unpublished decision to discontinue the product.

With respect to the plaintiff's experience with Logitech, the Complaint alleges that he purchased the Logitech system with four cameras through its website. Prior to purchasing, he read Logitech's marketing materials on its website and understood that he would receive a warranty. Soon after purchase he began experiencing problems with his alert system, including connectivity, rebooting when it was supposed to be operating, unanticipated shutdowns, gaps in recording and assorted other failures. When he notified Logitech of equipment failures, he was told that the product was no longer available. Further the equipment failed to alert him of or capture on video an animal's destruction of some of his property.

Logitech cites *Munch v. Sears Roebuck & Co.,* No. 06 C 7023, 2007 WL 2461660 (N.D. Ill. Aug. 27, 2009), for authority that the Complaint here lacks Rule 9(b) specificity. In that case, the plaintiff, like Plaintiff here, alleged that Sears received a "high number" of complaints concerning certain of its washers,

including repeated mechanical failures, electronic control panel failures, appearances of error codes on the control panel, clothes not being cleaned properly, including stains, mold, and mildew growing in the machines, and otherwise not performing as durable and dependable washing machines. Plaintiff contended that the high number of complaints put Sears on notice that its washing machines were defective and obligated it to disclose this to owners and potential purchasers of the machines. Instead of disclosing this, Sears actively concealed the problems by blaming the failures on owners' conduct. The court granted the motion to dismiss the fraud and unjust enrichment claims based on Rule 9(b). The court reasoned that an allegation of a "high" incident of failure was insufficiently specific to withstand a motion to dismiss. The court stated that plaintiff failed to give any meaning to the term "high." What was important was that the rate of failure be material, *i.e.,* whether the machine typically failed during or after the warranty period, whether they could be repaired, repair costs and whether the machines repeatedly failed.

Here the Plaintiff's case is slightly better than the plaintiff's in the *Sears* case. While the Plaintiff here does not present a failure rate, he does allege the high cost of

repairs and the inability to repair. The most credible allegation of fraud however is that Logitech concealed its decision to discontinue the specific alert system due to product failure, and its decision not to disclose this to the purchasers. The one problem Plaintiff presents is that he does not disclose the date he purchased his system. This is a significant failure when considering Rule 9(b). If he purchased his system prior to the 2012 decision to discontinue, the decision itself could not be an act of fraud. The Court will dismiss the ICFA claim with leave to amend.

### E. Breach of Warranty Claims

Next Defendant seeks dismissal of Plaintiff's breach of warranty claims implied and express. Here Plaintiff is not saddled with the Rule 9(b) specificity requirement. Plaintiff has clearly alleged that the system he purchased from defendant did not perform as it was supposed to. He also alleges that he repeatedly consulted Logitech on the defects without any help and was told that it could not replace the defective equipment because it was no longer available. He therefore has alleged that the product was not merchantable at the time of sale, he suffered damages, and he gave Logitech notice. This is enough as it was in the *Sears* case to withstand a motion to dismiss.

## F. Express Warranty Claim

Defendant also seeks to dismiss the Express Warranty claim. Since the warranty is not set forth in *haec verba* it was difficult for the Court to determine the extent of its coverage. The Complaint does allege that the warranty was "illusory" because the product was so problem ridden and defective that the product would not work. This is sufficient to withstand a motion to dismiss at this stage of the litigation.

## G. Unjust Enrichment Claim and Claim for Declaratoy Judgment

The Defendant lastly moves for dismissal of the unjust enrichment claim and the claim for declaratory judgment. The unjust enrichment claim, says Defendant, is duplicative of the underlying fraud claim. They are both based on Logitech's deceptive advertising. Therefore disposition of the fraud claim will dispose of the unjust enrichment claim. *Association Benefits Services v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). This count is dismissed without prejudice.

The claim for declaratory judgment is likewise duplicative. Paragraph 78 of the Complaint merely alleges that the Plaintiff claims that Logitech's marketing practices of defective advertising and marketing and that it complied with its warranty obligations. The paragraph alleges that Logitech claims that it

complied with its warranty obligations. While the Declaratory Judgment Act can be read to allow such a claim, the courts retain discretion to dismiss such claims when they are clearly duplicative. *Frazier v. U.S. Bank,* 2013 WL 1337263 (N.D. Ill. Mar. 29, 2013). This count is dismissed without prejudice.

### III. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. the Alleged Nationwide Class excluding California claim is dismissed with prejudice;

2. the Unfair Competition and Consumer remedies claim under California law is dismissed without prejudice;

3. the Breach of Express Warranty claim is denied;

4. the Breach of Implied Warranty claim is denied;

5. the Unjust Enrichment claim is dismissed without prejudice; and

6. the Illinois Consumer Fraud Act claim is dismissed without prejudice.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 3/7/2018