```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| JAMES ANDERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>LOGITECH INC.,<br><br>    Defendant. | Case No. 17 C 6104<br><br>Judge Harry D. Leinenweber |

## ORDER

Defendant Logitech Inc.'s Motion to Compel Arbitration [Dkt. No. 50] is denied.

## STATEMENT

Plaintiff James Anderson has filed a putative class action for consumer fraud and warranty violations arising out of Logitech's allegedly deceptive and fraudulent marketing of its Alert digital home security camera systems. (First Amended Compl. ("Compl") ¶ 1, Dkt. No. 37.) Sometime between May 3, 2013, and December 23, 2015, Anderson purchased four of Logitech's products: two from www.logitech.com, one from www.amazon.com, and one from an unknown source never specified in the First Amended Complaint. (Compl. ¶ 41.) Logitech's Motion only concerns the first three purchases since it lacks the requisite information to determine whether an arbitration agreement governs the fourth. The two purchases from www.logitech.com were consummated through a third-party reseller called DR globalTech Inc. ("Digital River"), which hosts the domain that processes payment for the products. To complete the three purchases from both websites, Anderson had to

agree to Amazon's Conditions of Use and Digital River's Terms of Services, both of which contained arbitration clauses (collectively "Arbitration Agreements"). Though a nonsignatory to those Agreements, Logitech now moves to compel arbitration based on these clauses.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). In ruling on a motion to compel arbitration, the Court must evaluate: (1) whether there is a valid agreement to arbitrate the issues raised in the Complaint; and (2) whether the scope of the Arbitration Agreements is broad enough to encompass the dispute. *Jernstad v. Green Tree Servicing, LLC*, No. 11 C 7974, 2012 WL 8169889, at *2 (N.D. Ill. Aug. 2, 2012) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985)). To determine whether the parties have agreed to arbitrate a certain matter, "federal courts generally should rely on state contract law governing the formation of contracts." *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005).

The FAA "reflects both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018). As such, "the party seeking arbitration is entitled to the benefit of the doubt," and "where any ambiguity as to the scope of the clause exists, [the Court] will construe it in favor of the party seeking arbitration." *IBEW Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014). Finally, courts review motions to compel arbitration under a summary judgment standard. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). "[T]he evidence of the non-movant is to be

believed and all justifiable inferences are to be drawn in his favor." *Id.*

Here, Logitech's ability to compel arbitration is dependent on whether, as a nonsignatory, it can invoke the Arbitration Agreements. The Court finds this issue dispositive and so need not venture into the dizzying array of factual and procedural arguments Anderson presents. Nonsignatories to a contract may enforce arbitration clauses through several limited theories. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Logitech advances three such theories in its Motion: equitable estoppel, third-party beneficiary, and agency. None, however, carries the day.

Logitech predominately relies on *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 (N.D. Ill. 2001). In that case, the court found that based on the aforementioned theories the nonsignatory defendant could enforce the arbitration agreement between the signatories: plaintiffs and a non-party which shared somewhat of an employer/employee-type relationship with the defendant. The plaintiffs there "allege[d] a scheme by defendants to acquire and improperly exploit [the plaintiffs'] assets, using the contracts as a principal instrument in the scheme." *Id.* at 1003-05. Given that, "plaintiffs' fraud claims ar[o]se out of and relate[d] to the contracts," such that the plaintiffs were equitably estopped from avoiding the arbitration those same contracts demanded. *Id.* The *Hoffman* court also found applicable the third-party beneficiary theory, emphasizing that the contract at issue included terms written expressly for the nonsignatory defendants' benefit (*i.e.*, referencing the defendants' names directly). *Id.* And finally, referring to "agency or related principles," the court recognized that the conduct of both the defendants and the non-party signatory was so intertwined as to

the plaintiffs' alleged fraud that the nonsignatory defendant could invoke the arbitration agreement. *Id.* at 1005.

Contrary to Logitech's arguments, none of the *Hoffman* circumstances are present here. Taking the last theory first, the Court turns to agency. The *Hoffman* court held that a nonsignatory defendant may invoke the arbitration agreement when, "under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration between the signatories be avoided." *Id.* (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)). In other words, more than just sharing an agency relationship, the theory applies only when the nonsignatory defendant's alleged misconduct is inextricably intertwined with the contract at issue. As the Court observed in the October 2, 2018, hearing, Logitech and Digital River share an agency relationship. (*See* Status Hearing Tr. 2:19-20, Dkt. No. 87.) But Logitech cannot, on the basis of this relationship alone, invoke arbitration as a nonsignatory. Unlike the nonsignatory defendants in *Hoffman,* Logitech fails to show that its relationship with Digital River is "sufficiently close" that its invocation of the Arbitration Agreements is warranted.

To elaborate, Logitech sells its products exclusively through "resellers" such as Digital River and Amazon. Logitech contends that by doing so, any alleged misconduct it has committed as a manufacturer is inextricably intertwined with the Arbitration Agreements and thus must be able to enforce them. That is not so. Anderson's claims relate to Logitech's false advertisement, fraudulent concealment, and faulty warranty program. (Compl. ¶¶ 8-40.) These claims are wholly unrelated to the Arbitration Agreements, which govern the purchase transactions that take place

- 4 -

on the Amazon and Digital River websites. *See Masters v. Lowe's Home Centers, Inc.*, No. 09-CV-255, 2009 WL 1657925, at *4 (S.D. Ill. June 11, 2009) (refusing to enforce arbitration agreement against consumer because consumer's "claim against [the nonsignatory defendant] does not refer to nor depend on her contractual rights"). Moreover, the impact of yielding to Logitech's argument would prove unwieldy. Any nonsignatory defendant selling its products exclusively through Amazon or other reseller can, at its convenience, invoke that reseller's arbitration clause. In other words, the limited exceptions (*i.e.*, the aforementioned theories) for when nonsignatory defendants may invoke an arbitration agreement would swallow the rule. Logitech's argument for agency thus fails.

Logitech's second theory—third-party beneficiary—fares no better. In Illinois, arbitration may be enforced by a nonsignatory only "[w]here it is shown that the signatories to the agreement intended that the nonsignatories were to derive benefits from the agreement and where the arbitration clause itself is susceptible to this interpretation[.]" *Dannewitz v. Equicredit Corp. of Am.*, 775 N.E.2d 189, 192 (Ill. App. Ct. 2002); *see also Hoffman*, 143 F. Supp. 2d at 1004. Logitech contends that as its resellers, Digital River and Amazon intended to confer upon Logitech the benefit of the Arbitration Agreements. But the terms of those Arbitration Agreements refute Logitech's argument. For example, Digital River's Terms of Sale provisions 10.1 and 10.2 provide:

> *We* will make every reasonable effort to resolve any disagreements that *you have with us*. In the event that *we* cannot resolve a disagreement to your satisfaction (or if *we* cannot informally resolve a concern we may have with you after attempting to do so informally), then *you and we* agree that except as expressly provided in Section 10.2 below, any claim dispute, or controversy *you may have against us* arising out of, relating to, or connected in any way with these Terms, the DR Commerce

> Solution, or the purchase or attempt to purchase of any Products or DR Services through the DR Commerce Solution shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association . . .
>
> \* \* \*
>
> This Section 10 applies to all consumers to the fullest extent allowable by law. The disputes governed by these procedures in this Section 10 include without limitation (a) claims arising out of or relating to any aspect of the relationship between *you and us*; (b) claims that arose out of your use of the DR Commerce Solution; and (c) claims currently the subject of a purported class action litigation in which you are not a member of a certified class.

(Def.'s Mot. to Compel Arbitration 5-6; Dkt. No. 51 (emphasis added).) The Agreement repeatedly refers to "you" and "we" or "us," as well as limits the arbitrable claims to those "relating to any aspect of the relationship between you and us." Logitech provides no information or provisions defining such terms, so the Court must take them at face value. Unlike *Hoffman,* there is no reference to any third party, let alone to Logitech specifically. And there is nothing to insinuate that the terms should be interpreted broadly to encompass claims against any third party.

Logitech's third-party beneficiary theory fares no better under Amazon's arbitration clause. That clause provides:

> Any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court . . .

(Def.'s Mot. to Compel Arbitration 8.) Albeit broader than Digital River's Terms, Amazon's catch-all phrasing falls short of demonstrating an intent to confer a benefit on Logitech. Again, if Logitech's position were accepted, it would enable all manufacturers selling through Amazon (a gargantuan number) to invoke Amazon's end-user arbitration clause. That cannot stand.

And to any extent, as described above, the linchpin of the analysis is the parties' intention. There is no evidence that Amazon intended to confer this benefit on Logitech specifically. As such, Logitech fails to show that it is a third-party beneficiary of the Arbitration Agreements.

Finally, Logitech argues that is can invoke the Arbitration Agreements under a theory of equitable estoppel. That theory is similar to and overlaps with agency. Equitable estoppel "allows a nonsignatory to compel arbitration when a signatory's claims are grounded in or intertwined with the terms of the written agreement." *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876, 881 (N.D. Ill. 2006) (citation omitted). To put in another way, "when each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate." *Hoffman*, 143 F. Supp. at 1004-05. As was the case for agency, Logitech fails to show adequately that Anderson's claims are so intertwined with or grounded in the contracts containing the Arbitration Agreements for equitable estoppel to apply. Again, Anderson's claims relate to Logitech's alleged false advertisement, fraudulent concealment, and faulty warranty program, not to the transactions of the products themselves which are governed by the Arbitration Agreements. *Cf. Hughes Masonry Co., Inc. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981) (finding the plaintiff equitably estopped from arguing that the nonsignatory could not invoke the arbitration clause because *the plaintiff's claims* against the nonsignatory *were connected to the contract* with the arbitration clause). While Amazon's Agreement states that it can invoke arbitration for "[a]ny dispute or claim relating in any way" to "any product," this broad language does not rise to

the level of intertwinement necessary for equitable estoppel. Anderson's claims, although encompassed under the Agreement's broad umbrella, do not "arise out of or relate" directly to the Agreement. *Hoffman*, 143 F. Supp. at 1004. Accordingly, Logitech cannot prevail on its equitable estoppel theory.

In sum, none of the theories Logitech advances holds water. Logitech has failed to show that as a nonsignatory, it can invoke the Arbitration Agreements. For the foregoing reasons, Logitech's Motion to Compel Arbitration is denied.

											 _____
											 Harry D. Leinenweber, Judge
											 United States District Court

Dated: 12/11/2018